# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMY DANIELLE MCKIM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of the Social )<br>Security Administration, [1] )<br>)<br>Defendant. ) | Case No. CIV-18-282-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Amy Danielle McKim requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-six years old at the time of the administrative hearing (Tr. 34, 220). She has a high school equivalent education and has worked as a cashier and stocker (Tr. 59, 255). The claimant alleges that she has been unable to work since December 16, 2014, due to depression, anxiety, high blood pressure, and pain and arthritis in her knees, neck, elbows, and shoulders (Tr. 254).

## Procedural History

On August 7, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Daniel Curran conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 3, 2017 (Tr. 15-25). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) with occasional climbing ramps/stairs, stooping, kneeling, and crouching, but should avoid climbing ladders, ropes, or scaffolds (Tr. 21). The ALJ further found the claimant could understand, remember, and carry out simple instructions; make judgments commensurate with unskilled work, *i. e.*, simple work-related decisions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting (Tr. 21). The ALJ further limited the claimant to work that does not require joint decision-making or team work and found that she could have occasional contact with the general public but could not direct or receive directions from the general public, stating that her interactions on the job with other people must be superficial rather than substantive (Tr. 21). The ALJ also limited the claimant to simple, routine, solitary, and repetitive work that does not require close oversight by a supervisor (Tr. 21). As to environmental limitations, the ALJ found the claimant must avoid exposure to unguarded hazards such as uneven walking surfaces, open nip points, unprotected heights, moving machinery, open pits, open flames, and open pools of water; could occasionally be exposed to extreme temperatures, loud noises, smoke, flashing lights, or other intrusive environmental distractions; and required an indoors, environmentally-controlled work place (Tr. 21). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled

because there was work she could perform in the national economy, *e. g.*, sorter, final assembler, and order clerk (Tr. 24-25).

## Review

The claimant alleges that the ALJ erred by: (i) failing to properly evaluate the opinions of nurse practitioner Jessica Keeling, (ii) ignoring probative evidence, and (iii) failing to account for the vocational expert's ("VE") testimony regarding the provision of chairs that accommodate obesity in unskilled jobs. The undersigned Magistrate Judge agrees that the ALJ failed to properly evaluate Ms. Keeling's opinions, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative joint disease, morbid obesity, and depressive disorder (Tr. 17-18). The relevant medical records reveal that nurse practitioners at the Family Health Center of Southern Oklahoma ("FHCSO") regularly treated the claimant for knee pain and occasionally treated her for back pain between April 2014 and April 2016 (Tr. 711-745, 795-96, 894-96). An April 2014 MRI of the claimant's right knee revealed moderately advanced arthropathy for her age, genu valgus deformity, strain of the medial collateral ligament and anterior cruciate ligament, and moderate joint effusion (Tr. 371-72). An x-ray of the claimant's left knee taken in December 2014 revealed mild degenerative changes (Tr. 760). An x-ray of the claimant's right knee taken in January 2015 revealed mild osteoarthritis, degenerative changes of the patella, and mild prepatellar soft tissue swelling (Tr. 759).

On March 30, 2015, the claimant established care with Dr. Jeffrey Cumming and reported right knee pain that she rated at six on a ten-point scale and left knee pain she

rated at ten with activity and six while at rest (Tr. 951). On physical examination, Dr. Cumming found mild effusion in the claimant's knees and normal, painful range of motion (Tr. 953). He diagnosed the claimant with bilateral degenerative arthritis of the knees and administered a steroid injection in each knee (Tr. 954). Dr. Cumming administered additional steroid injections in July 2015 and in October 2015 (Tr. 947, 950).

State agency physicians reviewed the record in November 2015 and March 2016 and concluded that the claimant could perform sedentary work with occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, and never climbing ladders/ropes/scaffolds (Tr. 84-86, 111-14).

On April 16, 2016, the claimant presented to the Emergency Department at Alliance Health Madill for left knee pain and numbness on the bottom of her foot (Tr. 958-62). Dr. Justin Mitchell noted the claimant's extremities were normal except for pain, swelling, and tenderness in her left knee as well as limited range of motion due to pain (Tr. 959). A left knee x-ray taken that day revealed severe osteoarthritic changes (Tr. 963). Dr. Mitchell administered a steroid injection and diagnosed the claimant with osteoarthritis (Tr. 961-62).

The record contains four medical source statements from Jessica Keeling, a nurse practitioner at FHCSO who regularly treated the claimant between November 2014 and April 2016. In a letter dated July 28, 2015, Ms. Keeling stated that the claimant's health issues, including morbid obesity, hypertension, chronic knee pain, and arthritis, made it difficult for her to work and that she had been unable to "keep a job over the past year." (Tr. 707). On November 30, 2016, Ms. Keeling completed a form titled "Medical

Assessment of Ability to do Work Related Activities (Physical)" wherein she opined that the claimant could sit "upright not reclined" eight hours, stand four hours, and walk four hours total in an eight-hour workday (Tr. 955). Ms. Keeling also opined that the claimant could lift under ten pounds repetitively, between twenty and fifty pounds not repetitively, and could not lift anything over fifty pounds (Tr. 955). Ms. Keeling indicated both that the claimant could not work an eight-hour day at any level and that she could work an eight-hour day if permitted to sit or stand alternatively and take usual breaks (Tr. 955). Ms. Keeling also indicated that the claimant needed to elevate her legs as needed for edema (Tr. 955). In response to a written request for clarification submitted by the claimant's attorney in December 2016, Ms. Keeling stated that the claimant "could work an 8 hour day if allowed to take breaks and not stand all day." (Tr. 369). In response to an additional written request for clarification later in December 2016, Ms. Keeling stated that compression hose may help with the claimant's leg swelling, but that it was unknown if they would prevent it; the claimant could not sit for six hours out of an eight-hour day without elevating her legs; the claimant could not perform sedentary work eight hours a day without elevating her legs; and she could not perform sedentary work eight hours a day without breaks (Tr. 967).

  At the administrative hearing, the claimant testified that she was five feet eight inches tall and weighed 340 pounds (Tr. 41). She stated that she has had problems with her weight since she was a child and that numerous attempts at weight loss were unsuccessful (Tr. 41-42). As to her knee pain, the claimant testified that steroid injections provided relief for approximately one and one-half months (Tr. 44). As to the swelling in

her legs, the claimant testified that she was prescribed a diuretic pill and had taken diuretic pills in the past with some success, but that she was unable to afford them since losing her insurance (Tr. 45-46). The claimant also testified that she elevates her legs three or four times per day for an hour or an hour and a half to relieve the swelling (Tr. 47). She also stated she uses a cane for stability because she loses her balance "quite often." (Tr. 48). The claimant further stated that she takes narcotic pain medication three times per day, experiences "sleepiness" after each dose, and that her medication takes the "edge off," but does not fully relieve her pain (Tr. 51-52). As to specific limitations, the claimant stated that she could sit for an hour before experiencing pain and swelling in her legs, could stand for thirty minutes to an hour before needing to sit, could walk ten minutes before needing to stop and catch her breath, and could lift a gallon of milk but could not do so repeatedly (Tr. 55-58). In response to questioning from the claimant's attorney, the VE testified that employers must purchase special chairs to accommodate individuals weighing more than 250 pounds and that employers may be unwilling to incur the expense of such chairs for unskilled jobs (Tr. 65, 68-67). Additionally, the ALJ requested that the claimant's attorney obtain a statement from Ms. Keeling as to whether compression therapy would be a viable treatment for the claimant's swelling (Tr. 35-39, 72).

     In his written opinion, the ALJ summarized the claimant's testimony and much of the medical record. In discussing the opinion evidence, the ALJ summarized Ms. Keeling's July 2015 and November 2016 medical source statements but ignored her November 2016 opinion that the claimant must elevate her legs as needed and did not mention or discuss either of her December 2016 opinions (Tr. 18). He gave significant weight to the state

agency physicians' opinions because they were well supported and not inconsistent with the medical evidence (Tr. 23). The ALJ noted the record did not contain any opinions from treating or examining physicians indicating that the claimant was disabled or had limitations greater than those he found (Tr. 24). The ALJ then gave partial weight to Ms. Keeling's opinions and notes, finding they supported a sedentary RFC (Tr. 24).

Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Keeling herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-5; 20 C.F.R. §§ 404.1527(d),

416.927(d). Here, the ALJ did not mention the correct analysis anywhere in his opinion and wholly failed to discuss any of the relevant factors in his one-sentence analysis of Ms. Keeling's opinions. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. Additionally, the ALJ adopted Ms. Keeling's opinion that the claimant could perform sedentary work but failed to explain how her opinion that the claimant needed to elevate her legs was accounted for in the RFC assessment, or articulate any reasons for rejecting it. The ALJ thus engaged in picking and choosing among Ms. Keeling's opinion, which is also error. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

     Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 26th day of February, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**